UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TYRONE HUNTER | Case No. 17-CR-00173-2<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION

On May 31, 2017, the Grand Jury returned an indictment against Defendant Tyrone Hunter ("Defendant") and seven other co-defendants. The indictment charged Defendant in five counts: (1) conspiracy to distribute at least one kilogram of heroin and 500 grams of cocaine, in violation of 21 U.S.C. § 846 (Count One); (2) use of a telephone in furtherance of a narcotics offense, in violation of 21 U.S.C. § 843 (Count Nine); (3) possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) (Counts Eleven and Seventeen); and (4) possession with intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count Twenty). Indictment [146].

The charges stem from a long-term investigation of the Cali Boys drug-trafficking organization by the Drug Enforcement Administration ("DEA"). During its investigation, the Government obtained Title III intercepts of wire and electronic communications for approximately five telephones involved in the charged offenses.

Defendant now challenges the accuracy of the supporting affidavit used for Target Telephone 2's Title III intercept and requests an evidentiary hearing under

1

*Franks v. Delaware,* 438 U.S. 154 (1978). [501]. For the reasons discussed below, Defendant's *Franks* motion is denied.

## I. Factual Background

This case arises out of a DEA investigation targeting the Cali Boys, a faction of the Traveling Vice Lords street gang, "a violent, heroin and crack cocaine distribution organization that distributes illegal narcotics on the west side of Chicago." [501-1] at 11. On May 18, 2016, the Government applied under 18 U.S.C. § 2518 ("Title III") to Chief Judge Ruben Castillo for authorization to intercept wire and electronic communications occurring to and from Target Telephone 1. As required by Title III, the Government submitted a supporting affidavit from DEA Special Agent Paul Park. [527-1]. Among other things, the affidavit provided information gathered from various cooperating sources (including sources referred to as CS 1 and CS 3), regarding Co-Defendant Demetrius Yancy ("Yancy"). Yancy allegedly used Target Telephone 1. Judge Castillo authorized the Title III intercepts of Target Telephone 1.

The Government later filed an *ex parte* supplement to its May 18, 2016 affidavit after intercepting CS 1 discussing narcotics-related activity on Target Telephone 1. The *ex parte* supplement advised the Chief Judge that CS 1 (codefendant Jerome Choice) had acted inconsistently with his cooperation agreement by engaging in the narcotics-related conversation, and that he had been terminated as a cooperating source.

Subsequently, on June 17, 2016, the Government submitted another Title III application and supporting affidavit to Judge Castillo. This time, the Government's application and Agent Park's affidavit sought authorization for intercepts of wire and electronic communications occurring to and from Target Telephone 2. [501-1]. Codefendant Calvin Williams allegedly used Target Telephone 2. Agent Park's new affidavit included more recent facts obtained during the investigation at that time.

Among other things, the affidavit provided details about five calls intercepted on Target Telephone 1 in which Calvin Williams discussed narcotics activity. [501-1] at 15–18. The affidavit also detailed multiple controlled buys of narcotics Yancy sold to an undercover officer. *Id.* at 18–20. Additionally, the affidavit explained that the Cali Boys constitute a faction of the Traveling Vice Lords street gang, and that, according to CS 1, codefendants Anthony Williams and Yancy were members of the Cali Boys; Calvin Williams and Hunter were members of the Traveling Vice Lords; and Calvin Williams was "known to be a source of supply for narcotics to lower ranking members of the organization, including [Yancy]." [501-1] at 11, 13–14. As in the prior affidavit, Agent Park disclosed CS 1's gang affiliation, prior arrests and convictions, including numerous narcotics offenses, and that CS 1 had been paid for providing information to law enforcement. *Id.* at 13. Judge Castillo authorized the Title III intercepts of wire and electronic communications of Target Telephone 2.

Once more, the Government filed an *ex parte* supplement to the June 17, 2016 affidavit. [501-2]. The *ex parte* supplement again contained information about CS 1 stating: (1) CS 1 engaged in pertinent conversation regarding drug activity with

3

Yancy over Target Telephone 1; (2) CS 1 was not truthful with law enforcement regarding his narcotics activity; and (3) the affidavit contained information that was obtained from CS 1 before discovering that he was engaged in ongoing criminal activity. *Id.* at ¶ 2.

Now, Defendant challenges the veracity of the June 17, 2016 affidavit used for Target Telephone 2's Title III intercept[1] and requests a *Franks* hearing, seeking to suppress the evidence gathered during Target Telephone 2's intercept. Defendant argues that Agent Park's June 17, 2016 affidavit contains a false statement and omitted information regarding CS 1. [501] at 5. Defendant asserts that the affidavit was materially misleading, that Judge Castillo should not have found probable cause, and that Defendant is entitled to a *Franks* hearing. *Id.* at 9.

## II. **Legal Standard**

The law presumes the validity of affidavits supporting search warrants. *United States v. Johnson,* 580 F.3d 666, 670 (7th Cir. 2009). But a search warrant may be found invalid if the affiant obtains it by intentionally or recklessly presenting false, material information to the presiding judge. *Id.*

In making such a challenge, a defendant can obtain an evidentiary hearing only if he can make a substantial preliminary showing that: (1) the warrant affidavit contained a false statement; (2) the affiant made the false statement intentionally or with reckless disregard for the truth; and (3) the false statement was material to the finding of probable cause. *Franks*, 438 U.S. at 155–156. This standard also applies

---

[1] Defendant does not challenge Agent Park's supporting affidavit submitted for Target Telephone 1's Title III intercepts, nor the facts contained within it otherwise supporting probable cause.

4

to material omissions, provided a defendant shows that the affiant intentionally or recklessly omitted such information. *United States v. Mullins*, 803 F.3d 858, 862 (7th Cir. 2015); *United States v. Kimberlin*, 805 F.2d 210, 252 (7th Cir. 1986) (omission of a fact from an affidavit is material only if it undermines probable cause and amounts to a "deliberate falsehood or reckless disregard for the truth" ).

To warrant a hearing, however, a defendant's showing must contain more than conclusory allegations of deliberate or reckless misstatements, allegations of negligence, or the identification of mere factual errors. *United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013). Instead, a defendant must identify evidence showing that specific portions of the warrant affidavit were intentional or reckless misrepresentations, and that the affiant knowingly misled the court or entertained "serious doubts as to the truth of his allegations." *United States v. Lowe*, 516 F.3d 580, 584 (7th Cir. 2008) (quoting *United States v. 218 Third Street*, 805 F.2d 256, 258 (7th Cir. 1986)); *United States v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000) (to justify a hearing, then, the defendant must make an offer of proof with a specific statement of supporting reasons that both identifies the allegedly false portion of the affidavit and focuses upon the affiant's state of mind); *United States v. Pritchard*, 745 F.2d 1112, 1116 (7th Cir. 1984).

Finally, a defendant's substantial showing must focus upon the law enforcement officer's state of mind when the officer executed the affidavit in support of the search warrant request. *United States v. Owens*, No. 16-CR-38-JPS, 2016 WL 7079609, at *5 (E.D. Wis. December 5, 2016); *Jones*, 208 F. 3d at 607. Ultimately,

this Court's determination turns not upon whether the affidavit contained false information, but rather whether the affiant knew the information was false (or recklessly disregarded the misrepresentation) at the relevant time. *United States v. Schultz*, 586 F.3d 526, 531 (7th Cir. 2009).

Because it is difficult to meet this standard, the law rarely requires a *Franks* hearing. *United States v. Maro,* 272 F.3d 817, 821 (7th Cir. 2001); *Franks*, 438 U.S. at 171 (a defendant seeking a *Franks* hearing bears a substantial burden); *see also United States v. Hornick*, 815 F.2d 1156, 1158 (7th Cir. 1987) ("[defendant] bears a substantial burden to demonstrate probable falsity"); *United States v. Souffront*, 338 F.3d 809, 822–23 (7th Cir. 2003).

### III. <u>Discussion</u>

In this case, Defendant challenges the June 17, 2016 affidavit's validity, arguing that: (1) Agent Park included false statements and omitted information from the affidavit; (2) Agent Park intentionally or with reckless disregard for the truth omitted information and included false statements; and (3) Agent Park's misleading information remained material to a probable cause finding. [501] at 10.

#### A. <u>Intentional or Reckless Disregard for the Truth</u>

Defendant identifies three allegedly false or omitted statements that he claims warrant a *Franks* hearing:

First, Defendant alleges that Agent Park failed to disclose that CS 1 "may have been cooperating in order to work off a state court criminal case." [501] at 6. In support of this allegation, Defendant initially claimed that Agent Park omitted

6

information intentionally or recklessly, stating, "there is little question that Agent Park accessed this information previously, in order to obtain the information" about CS 1's "criminal history that was included in the affidavit." *Id*. at 14. But, in his reply brief, [534], Defendant now concedes that recently received CPD reports confirm that CS 1's handlers remained unaware of any state criminal case pending while he acted as a confidential source. *Id*. at 1. Given Defendant's concession, this Court need not further address this portion of Defendant's motion.

Second, Defendant claims that Agent Park intentionally or recklessly failed to disclose CS 1's long-time drug addiction. [501] at 5. As a preliminary matter, the parties do not dispute that CS 1 struggled with a long-term drug addiction. The parties do dispute, however, whether the Government knew of CS 1's drug addiction as of June 17, 2016. Thus, Defendant must make a substantial preliminary showing that Agent Park intentionally or recklessly omitted this information. To meet his burden, Defendant "must offer direct evidence" of Agent Park's state of mind or sufficient "circumstantial evidence" that he possessed "a subjective intent to deceive based on the nature of the omissions." *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014) (citing *United States v. McNeese*, 901 F.2d 585, 594 (7th Cir. 1990)).

Defendant fails to offer any direct evidence as to Agent Park's state of mind or any intent to deceive by omitting CS 1's drug addiction. Instead, Defendant relies upon a letter CS 1 wrote to the United States Attorney's Office, complaining about being charged in the indictment: "I began cooperating in this investigation in January of 2016" and provided law enforcement officers "with background and intelligence

7

information regarding [Traveling Vice Lords] and Cali-boy" which later led "to 51 arrests knowing I was a drug addict." [501-3] at 1. Additionally, Defendant cites CS 1's change of plea hearing transcript from July 2019, wherein he mentions his past drug use. In doing so, Defendant argues that Agent Park must have possessed knowledge of CS 1's drug addiction when he submitted the supporting affidavit in June of 2016, and thus, he must have possessed a subjective intent to deceive in omitting that fact.

Based upon the record, Defendant fails to make the requisite showing. At most, Defendant points to instances where CS 1 acknowledges his own drug addiction, but Defendant offers no evidence regarding when (or if) Agent Park knew of CS 1's addiction to drugs. Here, the letter fails to state exactly who learned of his addiction or when, and the 2019 plea transcript fails to show that Agent Park had any knowledge of CS 1's addiction at all, let alone that Agent Park intended to deceive the court.[2] Furthermore, Defendant presents no evidence establishing that Agent Park deliberately or recklessly omitted information about CS 1's drug addiction intending to mislead the court. Instead, Defendant merely speculates that "it is difficult to believe that an experienced DEA agent, who was previously a Chicago Police Officer for seven years, and who has significant training and experience in investigating drug-related criminal activity, would not recognize" that CS 1 "was a long-term drug addict." [501] at 14. Such conclusory statements about what the

---

[2] Defendant's most recent filing fails to cure the deficiencies of his proffer. [596] (Defendant makes a conclusory allegation in his own April 2020 letters that the Chicago Police Department knew of his drug addiction while he worked for them as an informant).

8

agent might have known, or otherwise might have recognized by CS 1's appearance (assuming the two ever met in person), fail to overcome the presumption of validity of Agent Park's affidavit or otherwise warrant a *Franks* hearing. *Johnson*, 580 F.3d at 671; *United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984); *Souffront*, 338 F.3d at 822 ("The presumption of validity cannot be overcome by defendant's self-interested inferences and conclusory statements.").

Third, Defendant claims that Agent Park falsely stated that CS 1 "has been a Cali Boys member [the gang under investigation] for over ten years" and Agent Park did so "deliberately or recklessly" in his affidavit. [501-1] at 13 n.3; [534] at 5. Once again, it is not enough for Defendant to simply rely upon a bare allegation that an affidavit contains inaccurate information. Rather, Defendant must make a substantial proffer that the affiant knew, or recklessly disregarded, that the statement was false and offer "direct evidence of the affiant's state of mind or inferential evidence to prove deliberate falsehood or reckless disregard." *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001) (citing *United States v. Williams*, 737 F.2d 594 (7th Cir. 1984)) (internal quotation marks omitted). In other words, Defendant's showing must demonstrate that Agent Park "perjured himself or acted recklessly because he seriously doubted or had obvious reason to doubt the truth of the allegations." *Johnson*, 580 F.3d at 670.

Defendant falls far short of the requisite showing. Agent Park's affidavit states that the "target of this investigation is the Cali Boys, a faction of the Traveling Vice Lords street gang," [501-1] at 11, and consistent with CS 1's National Crime

9

Information Center (NCIC) report, the affidavit states that CS 1 "has been a Cali Boys member" for over 10 years, [501-1] at 13 n.3. Read in context, Agent Park's affidavit clearly sets forth the involvement of two related gang factions and often uses "Cali Boys" and "Traveling Vice Lords" interchangeably. As such, Defendant fails to provide any basis for concluding that Agent Park made a false statement about CS 1's gang affiliations, either intentionally or with reckless disregard for the truth. Indeed, providing no sworn statements or other offer of proof, Defendant concedes, as he must, that a 2015 Cook County presentence investigation report lists CS 1 as a former Traveling Vice Lord, [501-5] at 7; and Defendant otherwise fails to show that CS 1 was not, in fact, a Cali Boy member or that Cali Boys are not themselves a faction of the Traveling Vice Lords. Instead, Defendant merely discounts the NCIC report and argues that it fails to corroborate Agent Park's assertion that, at the time of CS 1's cooperation, he was a Cali Boy or a Traveling Vice Lord. [543] at 6–7.

Here again, Defendant fails to carry his burden. Without a "substantial preliminary showing of contrary facts," Defendant's contentions do not warrant a *Franks* hearing. *Pritchard*, 745 F.2d at 1119.

      B.      <u>**Materiality to the Probable Cause Determination**</u>

To merit a *Franks* hearing, Defendant must also show that the alleged falsities or omissions would have affected the court's probable cause finding. *Schultz*, 586 F.3d at 531; *United States v. Clark*, 935 F.3d 558, 563 (7th Cir. 2019); *McMurtrey*, 704 F.3d at 508.

Defendant challenges the probable cause finding, alleging that CS 1's credibility and reliability remain "severely undercut by his long-term, active drug addiction, and the fact he was not a Cali Boy, and hence may not have been as close with his co-defendants as the affidavit suggests." [501] at 10. Certainly, when an informant's statements provide the sole basis for an affidavit, the affiant's failure to disclose information about the informant's credibility or to independently corroborate the information can undermine a finding of probable cause. *See Glover,* 755 F.3d at 817 (finding a search warrant affidavit insufficient where it omitted relevant, damaging information about a vital informant's credibility such as his criminal record and his expectation of payment). Here, however, CS 1 was not the sole factual basis for probable cause, and Agent Park's affidavit otherwise disclosed sufficient information impacting CS 1's credibility.

Beyond the background information provided by CS 1, Agent Park provided substantial evidence to support a finding of probable cause. The affidavit detailed intercepted telephone calls and controlled undercover purchases of narcotics on April 5, 2016, May 26, 2016, and June 2, 2016. [501-1] at 18–20. For example, before the June 2, 2016 purchase, Calvin Williams placed two phone calls to Yancy, and he went to the same location as Yancy, immediately before and after Yancy sold narcotics to an undercover officer. *Id.* During the intercepted calls, Calvin Williams discussed narcotics in coded terminology, which the affiant explained based upon his training and experience. In addition, pen register and toll record analysis confirmed that Target Telephone 2 remained in frequent contact with the phones Calvin Williams,

11

Yancy, and Hunter used. *Id.* at 21–23. Even absent the background information provided by CS 1, the totality of the circumstances established probable cause to authorize the wiretap.

In the affidavit, Agent Park also qualified the credibility of CS 1's information. For example, Agent Park detailed CS 1's extensive criminal history, his gang involvement, and his paid cooperation:

> CS 1 began cooperating in this investigation in or around January 2016 and provided law enforcement officers with background and intelligence information regarding the Cali Boys. Law enforcement has independently corroborated much of the information provided by CS 1 through controlled buys, surveillance, and information received from other confidential sources. CS 1 has been a Cali Boys member for over 10 years. CS 1 has been arrested 29 times, eight times for narcotics related offenses. CS 1 has seven criminal convictions, five of which were for narcotics related offenses. To date, CS 1 has been paid approximately $400 for information provided in the investigation.

[501-1] at 15 n.6. Furthermore, the *ex parte* supplement to the June 17, 2016 affidavit, once again, informed the Chief Judge that CS 1 had acted inconsistently with his cooperation, and that the government terminated him as a cooperating source. [501-2]. As such, the entire record properly allowed the Chief Judge to consider and weigh CS 1's credibility.

Given the totality of the circumstances provided by Agent Park (including laundry list of CS 1's credibility issues), the absence of an additional statement about drug addiction fails to constitute a material omission for the probable cause finding. Here, the record confirms CS 1's ability to function as an addict, and Defendant offers no facts to show that his addiction impaired his ability to provide reliable information. *See United States v. Scott*, 610 F.3d 1009, 1015 n.2 (8th Cir. 2010) (finding that

12

defendant made no showing that the drug use of the informants "affected their ability to provide accurate information or otherwise impacted the probable cause finding"). Indeed, CS 1's addiction actually corroborates his access to the relevant information he provided—an addict would certainly be knowledgeable about who was selling what type of narcotics where and when. *See, e.g.*, *United States v. Robinson*, 546 F.3d 884, 888 (7th Cir. 2008) ("While the omitted information could have detracted from the warrant-issuing judge's assessment of [the source's] credibility, we agree with the magistrate and district judges that it might also have bolstered [his] credibility in some ways.").

Additionally, any omissions about an informant's addiction matter far less where, as here, the affidavit ultimately corroborates the informant's statements with the investigative efforts of law enforcement. *United States v. Washburn*, 383 F.3d 638 (7th Cir. 2004); *see also United States v. Hecke*, 329 Fed. App'x 676, 677 (7th Cir. 2009) (tips from a confidential informant of "unproven reliability may support a finding of probable cause as long as the affiant's investigation substantially corroborates the informant's credibility."). For example, the evidence corroborated a variety of details provided by CS 1, including that: (1) the interceptees operated a narcotics operation at California and Harrison and the 2700 block of West Lexington; (2) Calvin Williams supplied narcotics to individuals including Yancy; (3) Calvin Williams resided at 2815 West Harrison Street; and (4) Calvin Williams used Target Telephone 2.

13

Likewise, the record supports the probable cause determination because CS1 described his own firsthand involvement in narcotic-related activity, and thus, he directly implicated himself in criminal wrongdoing. *Jones,* 208 F.3d at 609 ("Even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case."). For example, CS 1 told investigators that in April 2016, he was with codefendant Calvin Williams and Defendant Hunter cooking a large amount of cocaine into crack cocaine inside Calvin Williams' home, and he provided specific details such as the home address, the size of the cocaine brick, and the process by which Defendant and codefendant processed the cocaine. [501-1] at 14 (CS 1 also stated he knew Calvin Williams "as fellow members of the Traveling Vice Lords.").

As part of the entire affidavit, Chief Judge Castillo considered such facts, and CS 1's various credibility issues and gang affiliations, as when he found probable cause. *United States v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2006) (personal knowledge and "track record of providing useful information to the authorities" constituted additional "strong evidence that the informant is a reliable source of information"); *see also Pritchard*, 745 F.2d at 1121 ("[T]he reliability and credibility of the informants was established for [the court] because their information was provided on the basis of personal knowledge and because they had previously provided accurate information to the government.").[3] Based upon the record, any additional

---

[3] The affidavit in support of the Target Telephone 1 wiretap further confirms CS 1's track record of providing reliable information. Among other things, CS 1 provided law enforcement with telephone

14

information regarding CS 1's drug addiction (or any additional nuance regarding his various gang affiliations) would not have undermined his finding of probable cause.

Finally, Defendant's unsupported assertions that Agent Park should have done more to obtain more information or further corroborate CS 1's information fail to merit a *Franks* hearing. *See Johnson*, 580 F.3d at 671 ("That the police could have done more work does not meet the high standard of requiring a *Franks* hearing."). As the court noted in *Johnson*, even "if the police's failure to corroborate the informant's claims was negligent, 'a little negligence—actually even a lot of negligence—does not the need for a *Franks* hearing make.'" *Id*. (quoting *United States v. Swanson*, 210 F.3d 788, 791 (7th Cir. 2000)).

## IV.  Conclusion

Based upon the record, Defendant has failed to meet the substantial burden necessary to warrant a *Franks* hearing and his motion is denied.

Dated:  June 11, 2020

Entered:

_____
John Robert Blakey
United States District Judge

---

numbers and nicknames belonging to Yancy, Calvin Williams, Atkins Williams, and Joseph Davis. [527-1] at 12–13.  These numbers were later corroborated as belonging to the named individuals through traffic stops, physical surveillance, controlled buys, and pen register analyses.